UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LACRESHA MURRAY | )( |
| *Plaintiff* | )( |
| v. | )( CIVIL ACTION NO. 1-23-cv-00541 |
| ERIC ANTHONY STONEBURNER, And THE CITY OF COPPERAS COVE, | )( |
| *Defendants* | )( |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE COURT**

Plaintiff, Lacresha Murray brings this action against the City of Copperas Cove, Texas for damages pursuant to 42 U.S.C. §1983 and §1988, the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also brings this complaint against Eric Anthony Stoneburner, an officer of the City of Copperas Cove, in his official and individual capacities pursuant to 42 U.S.C. §1983 and § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. Stoneburner made an unreasonable search and seizure of the person of Lacresha Murray, violating her rights under the Fourth and Fourteenth Amendments to the United States Constitution, and furthermore assaulted and battered Lacresha Murray. These violations of Lacresha Murray's constitutional rights were committed as a result of policies, procedures, practices or customs of the City of Copperas Cove.

**A. PARTIES**

1

1. Plaintiff is Lacresha Murray. Murray is an individual, a citizen of Texas and African-American female and a resident of Austin, Travis County, Texas and can be served through her attorneys of record.

2. Defendant City of Copperas Cove is a governmental entity and municipal corporation created under the Constitution and laws of the State of Texas. Defendant Copperas Cove may be served at 602 S. Main Street, Copperas Cove, Texas 76522. process by delivering a copy of the summons and of the complaint to the chief executive officer in a manner authorized by state law, including the Mayor, City Clerk or Secretary pursuant to Section 17.024 (CPRC).

3. Defendant Eric Stoneburner is a resident of Bell County, Texas and may be served with at 9904 Sunny Side Lane, Temple, Texas 76502-5371.

## B. JURISDICTION

4. The Court has jurisdiction over the lawsuit because the suit arises under the 4th, 5th and 14th Amendments to the United States Constitution.

5. The Court also has jurisdiction over the lawsuit because the suit arises under 28 United States Code Section 1333 as it involves Plaintiff, a citizen of the United States and Texas, who was deprived of her clearly established rights under state and federal law and the Constitution of the United States by actions of an individual acting under color of law who was employed by a governmental entity. The actions of the individual Defendant were pursuant to the custom, pattern, policy, and practices of the governmental entity.

6. The Court has supplemental jurisdiction under 28 U.S.C. Section 1367 over Plaintiff's claims against both Defendants under Texas state law because Plaintiff's claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### C.  VENUE

**7.**   Venue is appropriate because all or a substantial part of the facts and allegations making up this Complaint occurred within the Western District of Texas. Venue is appropriate in the judicial district where the defendant resides and where a substantial portion of the events and omissions occurred.  28 U.S.C. § 1391. Plaintiff notes that divisional venue has been abolished by statute. *Crumrine v. NEG Micon USA, Inc.*, 104 F. Supp. 2d 1123, 1126 (N.D. Iowa 2000)(quoting *Bishop v. C & P Trucking Co., Inc.* , 840 F. Supp. 118, 119 (N.D. Ala. 1993)). Plaintiff further notes that for the past 30 years, Federal Courts have uniformly held that § 1391 does not distinguish between divisions of a Federal District. *Garrett v. Hanson*, 429 F. Supp. 3d 311, 315 (E.D. Tex. 2019). Accordingly, venue is appropriate in any division within the Western District of Texas.

**8.**   Plaintiff further notes that, in large part because of the events at issue here, she has fallen upon hard financial times and currently resides in Austin, Texas. Additionally, a substantial number of Plaintiff's witnesses reside in Austin. It would impose a substantial burden on her to have to prosecute this case in any other venue. The venue is not inconvenient to the other witnesses.  Copperas Cove is approximately 73 miles from Austin and 70 from Waco. Because Austin witnesses are outside the subpoena power of the Waco Court, but no witnesses are beyond the subpoena power of the Austin Court, this matter should be adjudicated in the Austin Court.

### D.  CONDITIONS PRECEDENT

9.   All conditions precedent have been satisfied, performed or have occurred.

### E.  FACTS

10. On May 23, 2021, Plaintiff Lacresha Murray suffered multiple gunshot wounds and a false arrest and imprisonment when Eric Stoneburner, an officer of the Copperas Cove Police Department, used excessive and deadly force against her and then illegally placed her under arrest.

11. Stoneburner showed his badge and identified himself as a police officer.

12. Plaintiff Murray was arrested by Copperas Cove Police.

13. Plaintiff Murray was handcuffed, searched, and held in custody by the Copperas Cove Police Department.

14. Plaintiff was denied access to her phone.

15. She was informed that her phone was being held as evidence.

16. Stoneburner is a police officer under state law, as well as the policy of the department, at all times when within the county in which he is employed.  Off-duty officers become on-duty officers once they observe a crime and have the authority to make arrests and to use force even when they are "off-duty."

17. Whenever an off-duty officer decides to assert his authority to arrest or use force in the County that employs him, he is doing so acting as a police officer for the jurisdiction that employs him. In this instance, that is Defendant City of Copperas Cove, Texas in Coryell County.

18. His actions, therefore, were within the scope of Stoneburner's employment as a police officer for the City of Copperas Cove.

19. Defendant Stoneburner used unreasonable, unnecessary, and excessive force while illegally arresting and detaining Plaintiff Murray.  There was no basis for any arrest of Plaintiff and she was fleeing from Stoneburner in an attempt to avoid being shot and killed.

20. It is settled law that a person is seized within the meaning of the Fourth Amendment whenever a reasonable person would not feel that he or she was free to leave. Texas law requires probable cause that you have committed a crime before you are subject to an arrest.

21. Murray was *en route* to her then home in Copperas Cove, Texas but began to feel stomach pains while travelling east bound on Robertson Avenue in the city. She decided she needed to go to the hospital for treatment. Murray turned around in the street in order to change direction so that she could go west bound with a new destination of AdventHealth in Killeen, Texas. Murray pulled into a driveway and backed out with the intention of changing her vehicle to moving westbound. However, while Murray was still in the street after backing up but before she was able to move westbound, Stoneburner approaches her vehicle and instead of stopping his vehicle to permit Murray to continue her turning maneuver, he swerved his vehicle to the right and moved quickly past Murray with his young granddaughter in his vehicle.

22. Murray was shocked and surprised by Stoneburner's aggressive and dangerous move. Ranger Hill who later investigated the matter for the Texas Rangers concluded that the vehicles almost collided. However, she nonetheless turned to drive westbound, the same direction that Stoneburner was travelling.

23. Once again Stoneburner maneuvered his vehicle in a way she felt was recklessly dangerous; he essentially cut her off. While the vehicles were driving westbound, with Stoneburner in the lead, slammed on his brakes, thereby "brake-checking"[1] Murray's vehicle. Since she was in pain and needing to go to the hospital, Murray in turn passed Stoneburner's

---

[1] https://www.dictionary.com/e/slang/brake-check/ : A *brake check* is the unsafe action of applying a car's brakes to dissuade a driver who is following too closely…brake checking is considered very dangerous, as it can cause the following driver to crash into the brake-checking vehicle.

vehicle on the left and did so that she could drive unimpeded at a reasonable rate of speed to her destination, the hospital.

24. After she passed and was now ahead of Stoneburner's vehicle, Stoneburner rapidly sped up and began to drive closely behind her aggressively tailgating her such that she became worried about her safety.

25. Being very concerned about Stoneburner's actions, Murray stopped her vehicle in the 1500 Block of Robertson Avenue, next to a home on her vehicle's right and a school to her vehicle's left.

26. Murray exited her vehicle. She sought to approach Stoneburner and speak with him about his aggressive driving.

27. Stoneburner also exited his vehicle, and he drew his firearm from his right side and pointed the gun directly at Murray. Texas Ranger Hill who independently investigated this incident said this was Stoneburner's "duty handgun."

28. Murray was taken aback and immediately showed her empty hands.

29. Murray was frightened and could not believe what she was seeing.

30. Murray thrust both arms in the air to show that she had no weapons on her person. However, now in fear of being shot dead, Murray quickly turned around facing away from Stoneburner with her hands raised and she makes a run for her truck as Stoneburner advanced on her and continued to point the gun towards her and exhibit hostility.

31. Murray reaches the driver's side front door of her vehicle and Stoneburner is right there just a few feet behind her with his gun drawn, assuming a two-handed firing stance position illustrating his weapons training. Murray quickly gets in her truck and attempts to shut the door,

but while she is taking cover trying to close the door, Stoneburner begins firing into Murray's back, side and arm at point-blank range.

32. He fires several shots at Murray in rapid succession from just a few feet away.

33. As the gun is rapidly discharging, fearing for her life Murray slides down in the driver's seat. Stoneburner shoots at Murray, using deadly force from just a few feet away at point-blank range while standing smack dab in the middle of the road. Murray's vehicle had multiple bullet holes from the shooting, including some through the windows on the driver's side and the driver's side rear window, with at least one of the rounds penetrating and passing through the driver's seat head rest. *See* Exhibit 1.

34. If Murray had not flung herself down on the seat she would have been shot in the head. As it were, at least 8 bullets were fired at Murray. Murray was hit multiple times at least 5, but more likely 6 times. Murray was struck in the left arm and her back and side multiple times. Stoneburner forcibly opened the door to her vehicle with his weapon still pointed at her, informing her that she needed to get out of the car.

35. He shouts at her the equivalent of "are you stupid, are you blind, can you not see?"

36. The shots were fired from very close range and in a wanton and reckless manner that could have been dangerous even deadly to bystanders, including children.

37. Murray exited the vehicle, with her left arm held limply. Stoneburner apprehended Murray there at that time.

38. Murray felt dizzy and was losing blood.

39. Murray asked Stoneburner if she could sit inside the vehicle and he refused her request. Stoneburner makes Murray exit the vehicle, and tells her to stand up. Murray was confused and frightened by this deadly encounter and while in extreme pain she shouted at him. That's when

Stoneburner reaches to his right waistband underneath his shirt and pulls out a badge, and he waved it in the air while still holding his weapon on Murray. He then placed handcuffs on Murray's left arm, the arm in which he shot her and from which she was bleeding. He attempted to cuff Murray's right arm as well but this caused Murray so much pain that Stoneburner stopped. There is still a mist coming down outside and cars are driving by.

40. Stoneburner offers no medical assistance to Murray while she is detained and visibly bleeding.

41. Until Murray was handcuffed, Stoneburner continued to hold his weapon on her. Murray continues to bleed and complain about pain and dizziness. Eventually other officers arrive.

42. When the other officers arrive they do not take the handcuffs off of Murray and they do not arrest Stoneburner. Murray is still embarrassingly detained out in the open in handcuffs for all the neighborhood, persons in the school adjacent to where the incident occurred, or for motorists passing by to see. At some point after the other officers had arrived they did ask Stoneburner to turn over his weapon, but Stoneburner was never placed under arrest at the scene.

43. Murray was seated on the back of her truck's tailgate and interrogated by officers. One officer in particular took the lead in questioning Murray while she was still in handcuffs. The officer was wearing gloves and actually searched Murray.

44. Stoneburner went back to his car and was kept abreast of what was happening by his colleagues. At one point they informed him that they have called CID to come and investigate, and that he should not talk about what happened with anyone before CID arrives. Stoneburner is still unrestrained and has his cell phone in his possession. The officer calmly tells him to sit tight or words to that effect. As his colleagues arrive, Stoneburner waits calmly for CID to arrive so he could speak with them and then go home. Murray remains under arrest.

45. EMS arrives and examines Murray. They put her on a stretcher and prepare to take her to a treatment facility.

46. A police officer gets in the ambulance with Murray and asserts his authority over her, making it is obvious that she is not free to leave. Seeing this police officer accompanying her created a great deal of distress and anxiety in Murray. Another police officer followed the ambulance in a police car.

47. Murray was taken by Copperas Cove EMS to the Scott and White Emergency Room in Temple. A police officer was stationed inside of the room where she was being held, and this officer was not responsible for interviewing and did not interview Murray. Murray was obliged to undress in the room with the officer present. Murray asked a doctor to make him leave and the officer left the room but waited outside. Murray continued to be handcuffed the entire time while in the ambulance and while being treated at the hospital.

48. Murray's vehicle remained in the roadway and was unlawfully searched. Copperas Cove Police Department also unlawfully seized Murray's cell phone and prevented her from using it.

49. The hospital left some bullets and bullet fragments in Murray's arm, and these bullets still cause and enormous pain and anguish to Murray.

50. Plaintiff was illegally arrested. Such arrests are in violation of the Texas Code of Criminal Procedure and the Fourth, Fifth, Eight, and Fourteenth Amendments to the United States Constitution.

51. The injuries suffered by plaintiff were significant, substantial and severe: Defendant Stoneburner shot Murray in the arm, side and back

52. At the time of the arrest, Defendant Stoneburner and other employees or agents of Defendant City of Copperas Cove were acting under color of the laws and regulations of the State of Texas and the City of Copperas Cove Police Department.

53. The City of Copperas Cove then had a policy or custom in place that enabled its agents and employees to act with deliberate indifference to the constitutional rights of individuals. Specifically, the pattern or practice of tolerating misconduct by its police officers, encouraging misconduct by failing to adequately supervise, discipline, or train them. *See* 42 U.S.C. Section 1983, *Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *Brown v. City of Bryan County*, 219 F. 3d 450, 462-63 (5th Cir. 2000); *Brown v. Miller*, 631 F.2d 408, 411 (5th Cir. 1980); *Brown v. City of Alexandria,* Civil 1:20-CV-00541, 14-15 (W.D. La. Jul. 21, 2022).

54. Copperas Cove was further deliberately indifferent to Plaintiff Murray's rights for additional reasons, including:

(a) it has an overt policy of condoning or ratifying the use of excessive force or arrests by police officers;

(b) it fails to properly or adequately train officers in the use of force;

(c) it fails to properly or adequately train officers the administration of proper medical care, either while on or off-duty; and

(d) it created an atmosphere of lawlessness by failing to discipline officers for using excessive force.

**42 U.S.C. § 1983: EXCESSIVE FORCE CLAIMS AGAINST DEFENDANTS**

Plaintiff restates and incorporates for all purposes the facts and allegations in paragraphs 8 through 52.

55. Plaintiff incorporates by reference all of the foregoing and further alleges as follows: Officer Eric Anthony Stoneburner and other uniformed officers were acting under color of law employed as duly certified police officers of the Copperas Cove Police Department at all relevant times. The acts and failures of Defendants on the occasion in question were unreasonable and were the proximate and producing cause of the false incarceration, physical and mental injuries, aggravation of injuries, damages, and aggravation of damages, sustained by Ms. Murray.

56. The conduct and unreasonable actions of Officer Stoneburner in shooting Ms. Murray resulted from his use of excessive force that violated Ms. Murray's state and federal constitutional rights to be free from unreasonable seizures and bodily harm as protected by the Fourth Amendment to the United States Constitution. Officer Stoneburner shot Ms. Murray from behind when she posed no imminent threat of death or serious bodily injury to anyone, including any Copperas Cove Police Officers on scene.

57. The actions of Officer Stoneburner were clearly excessive and were objectively unreasonable in light of clearly established law, and directly caused Ms. Murray serious bodily and psychological injury. As a direct and proximate result of Officer Stoneburner actions, Ms. Murray suffered and continues to suffer significant permanent injury.

58. The conduct of Copperas Cove Police Department Officers violated Ms. Murray's constitutional rights to be free from unreasonable searches and seizures, and free from invasion or other injury to their persons and property as protected by the Fourth Amendment to the United States Constitution. Ms. Murray pleads that these Copperas Cove Police Officers used excessive force or unnecessary force in the course of the officers' supposed arrest, investigatory stop, or other "seizure" of a citizen in violation of the Fourth Amendment and its "reasonableness" standard.

59.     Ms. Murray, therefore, pleads that she was unlawfully assaulted by the named Defendants. Said actions resulted directly and only from Defendants' use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable.

## 42 U.S.C. § 1983 CLAIM AGAINST THE CITY OF COPPERAS COVE

60.     Plaintiff incorporated by reference all of the forgoing and further allege as follows:

61.     Defendant Stoneburner was acting under color of law as a member of the Copperas Cove Police Department when they violated the constitutional rights of Ms. Murray. At least initially, the City of Copperas Cove ratified the actions of Defendant Stoneburner.

62.     The City of Copperas Cove is liable under 42 U.S.C.S § 1983 due to one or more official or unofficial procedures, practices, policies, or customs of the City of Copperas Cove that deprived Ms. Murray of her Constitutional rights. The City is liable under 42 U.S.C.S § 1983 due to the following:

1) an inadequate policy for preventing use of force violations by their police officers;

2) an inadequate policy pertaining to encountering and communicating with persons identified as African-Americans and other disparate groups;

3) failed to adequately train their police officers on the use of force;

4) an inadequate policy pertaining to identifying themselves as police officers;

5) failure to adequately train their officers on arresting and/or subduing citizens;

6) inadequate supervision of police officers regarding their use of force;

7) employed an inadequate hiring policy, in that they failed to adequately screen out potential employees who presented a plainly obvious risk of committing use of force violations;

8) employing deadly force disproportionately against African-Americans and other disparate groups; and

9) refusing to supervise, reprimand, and/or discipline police officers who engage in misconduct contrary to the laws, rules, and regulations thereby in fact condoning the use of excessive force by its police officers and being deliberately indifferent to their misconduct;

63. Each of these polices was actually known, constructively known, or ratified by the City of Copperas Cove and its policymakers and were promulgated with deliberate indifference to Ms. Murray's rights, as guaranteed by the Fourth, Eight, and Fourteenth Amendments to the United States Constitution, and this specifically deprived Ms. Murray of her Fourth Amendment right to be free from unjustified government intrusions on her person and property. Moreover, the known and obvious consequence of these policies was that Copperas Cove Police officers would be placed in recurring situations in which the constitutional violations described within this complaint could result.  Accordingly, it is precisely these policies that made it highly predictable, probable even, that the particular violations alleged herein would result.

64. Moreover, such policies and practices were the moving force behind Ms. Murray's constitutional deprivations and injuries, and caused him to suffer severe damages.

Accordingly, the City of Austin is liable under 42 U.S.C.S § 1983 to Ms. Murray for her damages.

## 42 U.S.C. § 1983 CLAIM AGAINST THE CITY OF COPPERAS COVE PURSUANT TO THE EIGHT AMENDMENT GUARANTEE OF MEDICAL TREATMENT

65. Plaintiff incorporates by reference all of the foregoing and further allege as follows:

66. At all times material and relevant herein, Defendant and other officers, by acts and/or omissions and under color of state law, willfully deprived Ms. Murray her right to receive medical

care for injuries received at the hands of the police (see the 8th and 14th Amendments to the United States Constitution). Having shot Ms. Murray, Copperas Cove Police Department had an affirmative duty to render medical aid for the injuries they caused.

**67.     TEXAS STATE LAW CLAIM FOR FALSE IMPRISONMENT AND/OR FALSE ARREST**

68.     Plaintiff incorporates by reference all of the foregoing and further allege as follows:

69.     The claims brought under this section apply to Defendant Stoneburner and others.

70.     As a pendent state cause of action, at all times material and relevant herein, Defendants and other officers, by acts and/or omissions and under color of state law, willfully detained Ms. Murray without her consent and without authority of the law. Ms. Murray pleads false imprisonment and false arrest because Defendant and others formed the intent to unlawfully confine him and they carried out the intent by putting him in positions so that he could not move freely about his home, let alone leave her home without the very real probability that she would be assaulted, or even shot (as she eventually was) by the Police. Such confinement resulted in harmful detention without Ms. Murray's consent, and without authority of the law.

**TEXAS STATE LAW CLAIM FOR ASSAULT AND BATTERY**

71.     Plaintiff incorporates by reference all of the foregoing and further allege as follows:

72.     . Furthermore, the claims brought under this section apply to Defendant Officer Stoneburner and others. Any reference to "Defendants" in this section only applies to Defendant Stoneburner and others.

73.     As a pendent state cause of action, at all times material and relevant herein, Defendants, by acts or omissions and under color of state law did then and there intentionally, knowingly, or recklessly caused personal injury or severe personal injury to Ms. Murrayby uninvited and uncontested physical contact with Ms. Murray.

74. Under Texas law, the cause of action for excessive force is simply one for assault and battery. Consequently, Ms. Murray alleges that Defendant Stoneburner and others committed an assault upon him when they intentionally, knowingly, or recklessly employed large caliber duty weapon and shot Ms. Murray. At no time prior to or during the assault did Ms. Murray consent to being assaulted by Copperas Cove Police Department. Said assaultive conduct by Defendant and others was committed intentionally, knowingly, or recklessly and was the proximate cause of bodily and emotional injuries to Ms. Murray. Said injuries were the direct and immediate consequence of Defendant Stoneburners' and other wrongful act and a natural and direct result of the assault. At no time were Defendants privileged to take the violent action against Ms. Murray, because the use of force was not necessary.

Moreover, Defendants' assault and battery of Ms. Murray was not objectively reasonable when balancing the amount of force used against the need for force. **TEXAS STATE LAW CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND 42 U.S.C. § 1981 CLAIM AGAINST STONEBURNER IN HIS INDIVIDUAL CAPACITY**

75. Defendant Stoneburner and others were negligent, indeed grossly so, and subjected Ms. Murray to intentional infliction of emotional distress. Defendant Stoneburner and others did so by recklessly depriving Plaintiff of her right to be free from excessive force. Ms. Murray was, thus, subjected to distress that was intentionally inflicted.

76. The elements are:

    1) Defendant acted with intent;

    2) Defendant's conduct was extreme;

    3) Defendant's conduct caused the Plaintiff's emotional distress; and

    4) Plaintiff's emotional distress was severe.

All four of these must occur and did so. In the instant case, Defendant Stoneburner acted with intent to aim his gun at Plaintiff, actually shot Plaintiff multiple times, handcuffed Plaintiff and

15

did so in direct contravention to Plaintiffs condition, and refused to render aid after doing so. Plaintiff was also obliged to sit at the crime scene in plain view of passersby. This conduct was objectively extreme. Unquestionably, Defendant's conduct caused Plaintiffs embarrassment, humiliation, and emotional distress. This distress was severe. Plaintiff has been obliged to seek counseling for the mental disturbance this event has caused including anxiety, major depression, and PTSD arising out of this incident.

### Defendant Stoneburner's liability under 42 U.S.C. § 1981

77. The acts and omissions of Defendants on the occasion in question were unlawful, unreasonable, unconscionable, deliberately indifferent, wanton and depraved, and were the proximate cause and the producing cause of the injuries, aggravation of injuries, damages, and aggravation of damages. Defendant Stoneburner is liable in his individual capacity to Plaintiff for violations of her federal rights under § 1981 against Defendant Stoneburner in his individual capacity. Defendant Stoneburner's actions were as result of Plaintiff's race. This includes Defendant Stoneburner's brandishing his weapon, discharging his weapon, and failing to render medical aid after having done so.

### DAMAGES

78. Defendants' acts, as set out above, are the proximate causes of Plaintiff Lacresha Murray's damages, including injuries and damages suffered from the officers' assault and battery, as well as injuries and damages suffered from Plaintiff's false arrest, illegal imprisonment, and malicious prosecution. These damages are in excess of the minimal jurisdictional limits of this Court.

### GROSS MISCONDUCT AND EXEMPLARY DAMAGES

79. In conjunction with all of the foregoing, and with otherwise intentional and with deliberate or conscious indifference to the safety and well-being of citizens, including the Plaintiff, Lacresha Murray, the City of City of Copperas Cove adopted or maintained, through its final policymakers, unconstitutional policies and customs, and The City failed to implement constitutional and proper policies, practices, and procedures. These acts proximately caused and directly resulted in the violation of the constitutional rights of Lacresha Murray, and proximately caused all resulting damages to her.

80. Defendant Stoneburner acted willfully, deliberately, maliciously, and/or with reckless disregard for Lacresha Murray's constitutional rights when he used excessive force and injured Plaintiff by shooting her in the back, arm, and side, then arresting her.

81. The Plaintiff asks that the jury determine the proper amount to be determined as exemplary damages.

## ATTORNEY'S FEES

82. It was necessary for Plaintiff to hire the services of the undersigned attorneys to represent her in this complex and difficult proceeding and attendant cause of action. Plaintiff hired the undersigned attorneys to represent her, and pursuant to 42 U.S.C. §1988(b) of the Federal Civil Rights Act, he is entitled to recover his reasonable and necessary fees incurred for these attorneys, and the reasonable and necessary expenses incurred in the pursuit of this claim. Plaintiff is entitled to an award of attorney's fees and costs including, but not limited to, expert witness fees pursuant to 42 U.S.C. §1988(b) of the Federal Civil Rights Act when they prevail.

## JURY DEMAND

83. Plaintiff respectfully demands a trial by jury.

## PRAYER FOR RELIEF

84. Plaintiff asks for judgment against Defendants and prays for:

a. trial by jury on all issues triable to a jury;

b. judgment against Defendants, jointly and severally, on behalf of the Plaintiff for actual damages pursuant to 42 U.S.C. §1983;

c. statutory and reasonable attorney fees including expert fees, pursuant to 42 U.S.C. §1988(b) of the Federal Civil Rights Act, pre-judgment interest, post-judgment interest, and all of their costs herein expended;

d. compensatory damages;

e. judgment for the Plaintiff and against Defendants, for exemplary damages in an amount to be determined by the jury and this Court; and

f. any and all additional relief in equity or in law to which the Plaintiff may appear to be entitled.

Dated: May 15, 2023.

Respectfully Submitted,

 /s/ Gary Bledsoe

The Bledsoe Law Firm PLLC
State Bar No. 02476500
6633 Highway 290 East #208
Austin, Texas 78723-1157
Telephone: 512-322-9992
gbledsoe@thebledsoelawfirm.com

EDMUND M. DAVIS
LAW OFFICES OF EDMUND M. DAVIS
Bar Number 24028272
1108 Nueces Street Austin, Texas 78701
Phone 512/478-7381
attorney.skip.davis@gmail.com

Nickolas A. Spencer
9100 Southwest Freeway, Suite 122
Houston, TX 77074
Phone: 713-863-1409
Email: nas@naslegal.com
Bar no: 24102529
Attorneys for Plaintiff