IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LACRESHA MURRAY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:23-CV-541-DII |
| | § | |
| CITY OF COPPERAS COVE, TEXAS, and | § | |
| ERIC ANTHONY STONEBURNER, | § | |
| | § | |
| Defendants. | § | |

**<u>ORDER</u>**

Before the Court is Defendant City of Copperas Cove's ("Copperas Cove") motion to dismiss Plaintiff's amended complaint. (Dkt. 13). Plaintiff LaCresha Murray ("Plaintiff") filed a response, (Dkt. 38), and Copperas Cove filed a reply, (Dkt. 40). Also before the Court is Defendant Eric Anthony Stoneburner's ("Stoneburner") motion to partially dismiss Plaintiff's amended complaint. (Dkt. 14). Plaintiff filed a response, (Dkt. 39), and Stoneburner filed a reply, (Dkt. 42). Also before the Court is Stoneburner's motion to dismiss for improper venue or alternatively to transfer. (Dkt. 27). Plaintiff filed a response in opposition, (Dkt. 37), and Stoneburner filed a reply, (Dkt. 41). Finally, before the Court is Plaintiff's motion for leave to file a second amended complaint. (Dkt. 30). Copperas Cove filed a response in opposition, (Dkt. 32), and Plaintiff filed a reply, (Dkt. 34). Having considered the parties' briefs, the record, and the relevant law, the Court enters the following order.

**I. BACKGROUND**

Plaintiff is an African American female currently residing in Austin, Texas. (Am. Compl., Dkt. 12, at 2). Defendant Stoneburner was a police officer for the Copperas Cove Police Department. (*Id.* at 4). Plaintiff alleges the following facts. On May 23, 2021, Plaintiff was driving east on Robertson Avenue toward her then home in Copperas Cove when she began to experience

stomach pains. (*Id.* at 5). Plaintiff decided to turn around and head west to AdventHealth in Killeen, Texas, for medical care. While she was turning around in a driveway, Stoneburner, who was off-duty and in his personal vehicle, swerved his own vehicle around Plaintiff's and drove quickly past her. Their vehicles almost collided. Plaintiff completed her turn and ended up traveling west on Robertson Avenue behind Stoneburner. (*Id.*). Stoneburner then slammed on his brakes, and Plaintiff passed him on the left. (*Id.* at 6). With Plaintiff now in front of Stoneburner, Stoneburner sped up and began "aggressively tailgating" Plaintiff. Plaintiff stopped her vehicle on the side of the road in the 1500 block of Robertson Avenue. She got out of her vehicle to speak with Stoneburner about his aggressive driving. Stoneburner got out of his own vehicle and drew his firearm—which was his duty handgun—and pointed it at Plaintiff. (*Id.*). Plaintiff raised her hands in the air "to show that she had no weapons on her person." Then, she turned around and ran toward her vehicle with her hands up. Stoneburner moved toward Plaintiff, and Plaintiff got into her vehicle and tried to close the door. From a few feet away, Stoneburner fired eight shots at Plaintiff who was sitting in the driver's seat of her vehicle. Plaintiff was hit with at least five of those bullets in her left arm, back, and side. Stoneburner then told Plaintiff to get out of her vehicle. (*Id.*).

Plaintiff further alleges that once she exited her vehicle, Stoneburner pulled out his Copperas Cove police badge and waved it in the air. He then attempted to handcuff Plaintiff but was only able to place a handcuff on Plaintiff's left arm because of Plaintiff's injuries. Plaintiff was actively bleeding and stating that she was in pain and dizzy. Additional Copperas Cove police officers arrived at the scene, none of whom provided any medical assistance to Plaintiff, who remained bleeding and partially handcuffed. (*Id.* at 8–9). The officers told Plaintiff to stand up and had her sit on the tailgate of her vehicle while they interrogated her. One of the officers searched Plaintiff without her consent. Stoneburner was unrestrained and allowed access to his cell phone while he awaited the arrival of the criminal investigation department. (*Id.* at 9).

According to Plaintiff, after about 15 minutes, Copperas Cove Emergency Medical Services arrived and examined Plaintiff before putting her on a stretcher to transport her to an emergency room in Temple, Texas. A Copperas Cove police officer rode in the ambulance with her, and another followed the ambulance in a police car. (*Id.* at 9–10). There was a Copperas Cove police officer stationed in her treatment room who remained present while Plaintiff undressed. When Plaintiff asked that the police officer be removed, the officer waited outside the door. Plaintiff remained handcuffed while in the hospital, until the treating physician insisted the handcuffs be removed. Even after receiving medical care, Plaintiff still had bullets and bullet fragments in her arm. (*Id.* at 10). While Plaintiff was at the hospital in Temple, Copperas Cove police officers searched her vehicle. They also seized her cell phone and prevented her from using it. (*Id.* at 10). Stoneburner was indicted for aggravated assault on May 23, 2021. (*Id.* at 29).[1]

Plaintiff filed her original complaint in this matter on May 15, 2023. (Dkt. 1). She then filed an amended complaint, in which she brings claims against Defendants for violation of her Fourth and Fourteenth Amendment rights, as well as tort claims for false imprisonment, assault and battery, and intentional infliction of emotional distress. (Dkt. 12). Both Defendants separately moved to dismiss Plaintiff's amended complaint. (Dkts. 13, 14). Plaintiff filed a motion for extension of time to respond to the motions to dismiss and/or for leave to file a second amended complaint. (Dkt. 20). However, the Court then abated the proceedings until 30 days after the final resolution of Stoneburner's criminal case or trial of his criminal case. (Dkt. 22). On April 15, 2024, the parties filed a joint status report stating that Stoneburner entered a plea agreement for deadly conduct in the 52nd Judicial District of Coryell County, Texas, on December 20, 2023. (Dkt. 25). Accordingly, the Court immediately lifted the stay. (Dkt. 26).

---

[1] The Court refers to Plaintiff's alleged facts as "the Incident" throughout this order.

Shortly thereafter, Stoneburner filed his motion to dismiss or alternatively to transfer. (Dkt. 27). Plaintiff then filed her pending motion for leave to file a second amended complaint, (Dkt. 30), attaching her proposed second amended complaint, (Dkt. 30-1). Both Defendants' motions to dismiss from before the abatement are still pending before the Court. (Dkts. 13, 14).

## II. MOTION TO TRANSFER VENUE

Defendant Stoneburner asks the Court to dismiss or transfer this action to the Waco Division of the Western District of Texas pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a). (Mot. Transfer, Dkt. 27, at 2–3). To begin, Stoneburner has waived his Rule 12(b)(3) improper venue defense as he has already filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (*See* Dkt. 14); Fed. R. Civ. P. 12(h)(1)(A). Regardless, Stoneburner's reliance on Rule 12(b)(3) and Section 1406(a) in seeking an intra-district transfer is misplaced. Section 1406(a) requires a district court to dismiss or transfer a case to another district or division in which the case could have been brought if the district or division is the wrong venue. 28 U.S.C. § 1406(a). The question of whether the district is a wrong or improper venue is governed by 28 U.S.C. § 1391. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. For the W. Dist. Of Tex.*, 571 U.S. 49, 55 (2013). Section 1391 refers to judicial districts and does not distinguish between the divisions of a judicial district. All divisions within a district are proper venues for any case that may be filed within that district. *See Brooks v. J.B. Hunt Transp., Inc.*, No. 2:18-CV-00465-RSP, 2019 WL 13210805, at *1 (E.D. Tex. May 10, 2019). Accordingly, the proper vehicle for any intra-district transfer is Section 1404(a).

Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As such, "[t]he threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). If so, the Court turns to

consideration of "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847, at 370 (1986)).

The relevant factors include matters of both private and public interest. *Volkswagen AG,* 371 F.3d at 203; *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private-interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen AG*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. *Id.* No single factor is dispositive. *Id.*

The Court must also "give some weight to the plaintiffs' choice of forum." *Atl. Marine Const. Co.*, 571 U.S. at 63 n.6.  However, the plaintiff's venue choice "is neither conclusive nor determinative." *In Re: Horseshoe Entertainment*, 337 F. 3d 429, 434 (5th Cir. 2003). Rather, the party seeking transfer must show "good cause": a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Humble Oil & Refining Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). Thus, when the transferee venue is "not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). But when the movant demonstrates

that the transferee venue is clearly more convenient, "it has shown good cause and the district court should therefore grant the transfer." *Id.*

Neither Stoneburner nor Plaintiff contends that this case could not have been brought in the Waco Division. (Mot. Transfer, Dkt. 27, at 5; Resp., Dkt. 37, at 2).[2] The actions giving rise to this suit occurred in Coryell County, which is located in the Waco Division. (Mot. Transfer, Dkt. 27, at 5). Defendant Copperas Cove is located in the Waco Division, and Defendant Stoneburner lives in the Waco Division. (*Id.*). Plaintiff, herself, lived in the Waco Division at the time of the relevant events, although she has since moved to Austin. (*Id.*). This suit could certainly have been brought in the Waco Division. *See* 28 U.S.C. § 1391(b)(1) and (2) (venue proper where a defendant resides or where a substantial part of the events occurred). Accordingly, the Court will assess whether "the litigation would more conveniently proceed and the interests of justice be better served by transfer to" the Waco Division. *See Peteet v. Dow Chem. Co.*, 868 F.2d at 1436.

### A. Private-Interest Factors

### 1. The relative ease of access to sources of proof

Stoneburner has failed to establish any significant difference in the ease of access to sources of proof between the Austin Division and the Waco Division. He alleges that the physical evidence in this case, such as Stoneburner's gun and the scene of the Incident, are in the Waco Division. (Mot. Transfer, Dkt. 27, at 6). Further, "video footage and reports" are also in the Waco Division. (*Id.*). However, notably, Stoneburner does not specify where within the Waco Division these items are located. Copperas Cove, while located in the Waco Division, is about 65 miles from Waco and 67 miles from Austin. It seems to the Court that most evidence relevant to the Incident would be located in Copperas Cove. A difference of two miles does not make Waco "clearly more

---

[2] Copperas Cove did not file anything indicating whether it supports or opposes Stoneburner's motion to transfer.

convenient." *See Smith v. Michels Corp.*, No. 2:13-CV-00185-JRG, 2013 WL 4811227, at *3 (E.D. Tex. Sept. 9, 2013) ("a three-mile difference in distance—particularly where, as here, the minimum distance from each division is at least 77 miles—bears no weight as to whether the transferee division is clearly more convenient.") (internal citations omitted). Accordingly, the Court finds this factor is neutral.

### 2. The availability of compulsory process to secure witnesses' attendance

Stoneburner does not address the availability of compulsory process or any unwilling witnesses in his motion to transfer. Plaintiff states that the availability of compulsory process "seems to be even" but notes that Austin-area witnesses may not be within the reach of the Waco Division as Waco and Austin are around 100 miles apart. (Resp., Dkt. 37, at 6). Because neither party has identified a single witness to whom compulsory process would be applicable, the Court finds this factor to be neutral.

### 3. The willing witnesses' cost of attendance

Stoneburner states that he, other relevant Copperas Cove police officers, Copperas Cove city personnel, and lay witnesses to the incident are all located in Copperas Cove. (Mot. Transfer, Dkt. 27, at 6). Because Copperas Cove is only about two miles closer to Waco than Austin, the cost of attendance for willing witnesses will be about the same regardless of the venue. "Such slight differences in distance and inconvenience do not weigh in favor of transfer." *RPB Safety, LLC v. Tru-Vision Plastics, Inc.*, No. 6:18-CV-00367-ADA, 2019 WL 10349405, *3 (W.D. Tex. Feb. 20, 2019) (referring to a difference of 25 miles); *see also Smith*, 2013 WL 4811227, at *3 ("[T]he limited convenience gained, if any, by a transfer of three miles strips this factor of any significance. Surely the jurisprudence in this circuit is not headed toward such absolutist measurements. If so, we will soon be measuring in feet, not miles."). Stoneburner also claims that the Texas Ranger who investigated the incident, Nick Hill, is based in Waco. (Mot. Transfer, Dkt. 27, at 6). However,

Plaintiff counters that Ranger Hill now works in Austin and took a statement from Plaintiff related to this case in Austin. (Resp., Dkt. 37, at 5; Murray Aff., Dkt. 37-1, at 1). Stoneburner does not dispute this claim in his reply. Therefore, the Court finds this factor to be neutral.

### 4. Other practical problems that make the case's trial easy, expeditious, and inexpensive

Defendant does not highlight any additional problems arising from this case proceeding in Austin. Plaintiff claims that this factor is neutral. (Resp., Dkt. 37, at 6–7). The Court agrees and finds this factor to be neutral.

### B. Public-Interest Factors

### 1. The administrative difficulties flowing from court congestion

Neither party raises any argument as to the court congestion in the Austin or Waco Divisions. The Court finds this factor to be neutral.

### 2. The local interest in having local issues decided at home

Stoneburner argues, and the Court agrees, that the Waco Division has a stronger local interest in this case because the facts giving rise to the suit occurred in the Waco Division. However, because Copperas Cove is almost equidistant from Austin and Waco, the Waco Division has only the slightest of a greater interest in the suit than does the Austin Division. As with the preceding analysis of the sources of proof and cost of attendance factors, the differences between the Austin and Waco communities' interest in this case are so small that there really is no difference. Accordingly, the Court concludes that this factor is neutral. *See Smith*, 2013 WL 4811227, at *3 (finding this factor to be neutral when the relevant events occurred near the border of the Texarkana division and the Marshall Division of the Eastern District of Texas).

### 3. The forum's familiarity with the governing law, and 4. The avoidance of unnecessary conflict-of-law problems involving the application of foreign law

Neither party raises any argument as to these factors. The Court finds these factors to be neutral.

**5. Conclusion**

Considering all of the private- and public-interest factors are neutral, and giving some weight to Plaintiff's choice of forum, the Court finds that Stoneburner has not met his burden to establish that the Waco Division is "clearly more convenient" than the venue chosen by Plaintiff, which must therefore be respected. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. The Court will accordingly deny Stoneburner's motion to transfer.

## III. MOTIONS TO DISMISS

The Court will now address Stoneburner's motion to dismiss, (Dkt. 14), and Copperas Cove's motion to dismiss, (Dkt. 13).

### A. Legal Standard: Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because a court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## B. Discussion

### 1. Stoneburner's Motion to Dismiss

In her amended complaint, Plaintiff brings a Fourth Amendment claim against Stoneburner pursuant to 42 U.S.C. § 1983. (Am. Compl., Dkt. 12, ¶¶ 68–72). Plaintiff also brings several state torts claims against Stoneburner. (*Id.* at 22–25). Finally, Plaintiff brings a claim against Stoneburner for violation of her constitutional rights pursuant to 42 U.S.C. § 1981. (*Id.* ¶ 90). In his motion to dismiss, Stoneburner argues that the Court must dismiss all of Plaintiff's state law tort claims against him. (Mot. Dismiss, Dkt. 13, at 2). Stoneburner does not move to dismiss the Sections 1981 or 1983 claims, and the Court makes no finding as to the sufficiency of the pleadings relevant to those claims.

Stoneburner contends that because Plaintiff has alleged that he was acting in the scope of his employment as a police officer during the Incident, Plaintiff must pursue her state tort claims against

Copperas Cove, not Stoneburner, under the Texas Tort Claims Act ("TTCA"). (*Id.*). In response, Plaintiff argues that she has not alleged that Stoneburner was acting in the scope of his employment in relation to her state tort claims nor is she suing Stoneburner in his official capacity, making the TTCA irrelevant to this case. (Dkt. 39, at 1–2).

The TTCA provides a limited waiver of immunity for certain suits against Texas governmental entities. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 462 (5th Cir. 2010) (citing Tex. Civ. Prac. & Rem. Code § 101.021; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008)). This waiver of immunity does not extend to claims arising out of intentional torts. *See* Tex. Civ. Prac. & Rem. Code § 101.057 (excluding waiver for a claim "arising out of assault, battery, false imprisonment, or any other intentional tort"); *Morgan v. City of Alvin*, 175 S.W.3d 408, 418 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

A plaintiff who sues under the TTCA must elect pursuant to Section 101.106 between suing a governmental unit and suing an employee of that unit. "A plaintiff's suit against an employee of a governmental unit is . . . considered an 'irrevocable election' and bars suit 'against the governmental unit regarding the same subject matter unless the governmental unit consents.'" *Bustos*, 599 F.3d at 462 (citing Tex. Civ. Prac. & Rem. Code § 101.106(b)). As the Supreme Court of Texas has explained, the provision's "apparent purpose was to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." *Garcia*, 253 S.W.3d at 657. Section 101.106(f) of the Texas Civil Practice and Remedies Code states in pertinent part:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.

Thus, an individual defendant is entitled to dismissal under section 101.106(f) upon proof that the plaintiff's suit (1) was based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the TTCA. *Anderson v. Bessman,* 365 S.W.3d 119, 124 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The statute strongly favors dismissal of governmental employees. *Waxahachie Indep. Sch. Dist. v. Johnson*, 181 S.W.3d 781, 785 (Tex. App.—Waco 2005, pet. denied).

The first prong of Section 101.106(f) is whether the conduct at issue was within the scope of the defendant's employment with a governmental unit. This first component encompasses two inquiries: "whether the individual defendant was an employee of a governmental unit and whether the acts alleged fall within the scope of that employment at the relevant time." *Anderson*, 365 S.W.3d at 124. There is no dispute that Stoneburner was a police officer for Copperas Cove. However, Plaintiff disputes that she has characterized Stoneburner as acting within the scope of his employment during the Incident. (Resp., Dkt. 39, at 1). ("At no time does Plaintiff sue Defendant Stoneburner as an agent of Defendant City for state law causes of action . . . .").

Plaintiff asserts that she only pleads state tort law claims against Stoneburner in the alternative—in the case that the Court finds that Stoneburner was *not* acting within the scope of his employment during the Incident. (*Id.* at 9 ("The assault and battery, and the other state claims collectively, constitute an alternative claim because based on the purely personal ultra vires acts of Officer Stoneburner, those purely personal acts make him personally liable for state law claims in his individual capacity arising from the incident.")). This argument fails for several reasons. First, Plaintiff simultaneously claims that she alternatively brings state tort claims against Stoneburner in the case that the Court finds he was not acting within the scope of his employment and alleges repeatedly throughout her complaint that Stoneburner was indeed acting in the scope of his employment. In the "Facts" section of her amended complaint, Plaintiff alleges that "Stoneburner

showed his badge and identified himself as a police officer."[3] (Am. Compl., Dkt. 12, ¶ 11). She states, "Whenever an off-duty officer decides to assert his authority to arrest or use force in the County that employs him, he is doing so acting as a police officer for the jurisdiction that employs him." (*Id.* ¶ 17). She continues, "[Stoneburner's] actions, therefore, were within the scope of Stoneburner's employment as a police officer for the City of Copperas Cove." (*Id.* ¶ 18). Moreover, Plaintiff states that "Defendant Stoneburner admitted that he was acting within the scope of his employment with Copperas Cove Police Department" in his answer to her original complaint. (*Id.* ¶ 60). Even within her causes of action for state tort claims against Stoneburner, she states that "Defendant and other officers . . . willfully detained [Plaintiff]," (*id.* ¶ 83), that she did not "consent to being assaulted by Copperas Cove Police Department," (*id.* ¶ 87), and that Stoneburner did not act as a "reasonably prudent officer would," (*id.*). Plaintiff cannot reasonably claim that she is not alleging that Stoneburner was acting within the scope of his employment during the Incident.[4]

Second, Plaintiff cannot apply the ultra vires exception to her pleadings. "Under Texas law, a suit against a government employee in his official capacity is a suit against his government employer with one exception: an action alleging that the employee acted ultra vires." *Franka v. Velasquez*, 332 S.W.3d 367, 383 (Tex. 2011). An ultra vires action is one in which the plaintiff seeks "relief in an official-capacity suit against a government actor who allegedly has violated statutory or constitutional

---

[3] Under the Texas Tort Claims Act, scope of employment means "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." *See* Tex. Civ. Prac. & Rem. Code § 101.001(5). When deciding whether conduct satisfies this definition for purposes of Section 101.106(f), the critical inquiry is whether, when viewed objectively, "a connection [exists] between the employee's job duties and the alleged tortious conduct." *See Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017); *see also Pardo v. Iglesias*, 672 S.W.3d 428, 433 (Tex. App.—Houston [14th Dist.] 2023), *reconsideration en banc denied*, No. 14-22-00338-CV, 2023 WL 4188343 (Tex. App.—Houston [14th Dist.] June 27, 2023, no pet.).

[4] Plaintiff also argues that she only pleads these facts about Stoneburner's capacity to argue that Stoneburner was acting under the color of law for her Section 1983 claims against Stoneburner and Copperas Cove. (Resp., Dkt. 39, at 4–5). However, as the Court describes, the gravamen of Plaintiff's amended complaint is that Stoneburner was acting within the scope of his employment as a police officer during the Incident, and Plaintiff makes no attempt to meaningfully differentiate between "color of law" and "scope of employment" in her amended complaint.

provisions by acting without legal authority or by failing to perform a purely ministerial act." *Lazarides v. Farris*, 367 S.W.3d 788, 801 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009)). Governmental immunity does not bar such ultra vires claims, but the only remedies available to a successful plaintiff are prospective declaratory and injunctive relief. *Heinrich*, 284 S.W.3d at 376, 380; *see Lowell v. City of Baytown*, 356 S.W.3d 499, 501 (Tex. 2011) (explaining "retrospective monetary remedies are generally barred by governmental immunity"). Plaintiff seeks damages, not prospective injunctive or declaratory relief, in this case; thus, the ultra vires exception does not apply.

Third, the TTCA's elective remedies provision prevents Plaintiff from bringing claims against Stoneburner in his individual capacity in the alternative. Plaintiff must elect from the outset to *either* bring her state tort claims against Stoneburner in an individual capacity or against Stoneburner in his official capacity as an employee of a governmental unit. *See Garcia*, 253 S.W.3d at 657. Plaintiff, for the reasons detailed above, has clearly elected to pursue her state tort claims against Stoneburner in his official capacity as a police officer for Copperas Cove. Plaintiff contends that it would be improvident for the Court to force Plaintiff to either bring her state tort claims against Stoneburner in his individual capacity or against Stoneburner in his official capacity at the 12(b)(6) stage of litigation and that the Court should allow the state tort claims to go forward until the Court has decided whether Stoneburner was acting within the scope of his employment. (Resp., Dkt. 39, at 6). However, this is the exact election that Section 101.106 mandates.

A suit against a government employee in their official capacity is effectively a suit against the governmental unit itself. *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 357 (Tex. 2013) (explaining that a suit against an employee in his official capacity "is *not* a suit against the employee; it is, in all but name only, a suit against the governmental unit") (emphasis in original). If a plaintiff files a tort suit against only the employee in the employee's individual capacity, but the suit

is actually based on conduct within the general scope of the employee's employment and could have been brought against the governmental unit, then the suit is considered to be against the employee in his official capacity only, and the employee must also be dismissed on a proper motion. *Pardo v. Iglesias*, 672 S.W.3d 428, 431 (Tex. App.—Houston [14th Dist.] 2023), *reconsideration en banc denied*, No. 14-22-00338-CV, 2023 WL 4188343 (Tex. App.—Houston [14th Dist.] June 27, 2023, no pet.). Here, Plaintiff could have brought her tort claims against Copperas Cove as "[a] claim can be brought under the [TTCA] if the claim 'is in tort and not under another statute that independently waives immunity.'" *Id.* at 435 (citing *Franka*, 332 S.W.3d at 381; *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 659). Therefore, Plaintiff's claims against Stoneburner in his official capacity are actually claims against Copperas Cove, and the state tort claims against Stoneburner must be dismissed.

The Court's analysis, however, does not end there. The TTCA does not waive immunity for intentional torts. *Goodman v. Harris Cnty.*, 571 F.3d 388, 294 (5th Cir. 2009) (citing Tex. Civ. Prac. & Rem. Code § 101.057(2)). Plaintiff brings claims of false imprisonment, assault and battery, and intentional infliction of emotional distress, all of which are intentional torts. Accordingly, Copperas Cove has not waived its immunity from Plaintiff's state tort claims, and the Court must dismiss Plaintiff's state tort claims with prejudice.[5]

### 2. Copperas Cove's Motion to Dismiss

In her amended complaint, Plaintiff alleges that "Copperas Cove is liable under 42 U.S.C. § 1983 due to one or more official or unofficial procedures, practices, policies, or customs of the City of Copperas Cove that deprived [Plaintiff] of her Constitutional rights." (Am. Compl., Dkt. 12, ¶ 75). Municipal liability under Section 1983 requires proof of three elements: "(1) an official policy (2) promulgated by the municipal policymaker (3) [that] was the moving force behind the violation of a

---

[5] Because sovereign immunity deprives a court of jurisdiction, it may be raised at any time by any party or by the Court *sua sponte. Cephus v. Tex. Health & Human Services Comm'n*, 146 F. Supp. 3d 818, 829 (S.D. Tex. 2015) (citing *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *Johnston v. U.S.*, 85 F.3d 217, 218 n.2 (5th Cir. 1996)).

constitutional right." *Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023) (internal citations

omitted); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). An

official policy "usually exists in the form of written policy statements, ordinances, or regulations, but

it may also arise in the form of a widespread practice that is so common and well-settled as to

constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth*, 588 F.3d

838, 847 (5th Cir. 2009) (internal quotations omitted). To sufficiently plead that a practice is so

persistent and widespread as to have the force of law, a plaintiff's description of the alleged policy

cannot be conclusory and must contain specific facts. *Johnson*, 83 F.4th at 946. "Liability for failure to

promulgate policy . . . require[s] that the defendant have acted with deliberate indifference." *Porter v.

Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Like government defendants sued in their individual

capacity, "a municipality cannot be held liable under § 1983 on a respondeat superior theory."

*Monell*, 436 U.S. at 691.

   A plaintiff can also bring a municipal liability claim based on a failure-to-train theory. A

*Monell* claim based on a failure-to-train theory requires a plaintiff to prove that "(1) the

[city] failed to train or supervise the officers involved; (2) there is a causal connection between the

alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3)

the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional

rights." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citing *Thompson v. Upshur

Cty.*, 245 F.3d 447, 459 (5th Cir. 2001)). "Deliberate indifference is a stringent standard of fault,

requiring proof that a municipal actor disregarded a known or obvious consequence of his action."

*Connick v. Thompson*, 563 U.S. 51, 62 (2011) (cleaned up) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520

U.S. 397, 409 (1997)).

   Plaintiff's amended complaint, although difficult to distill, appears to allege that Copperas

Cove is liable for violations of her constitutional rights due to both its policies and its failure to

properly train its officers. Copperas Cove contends that Plaintiff's allegations are conclusory and speculative and therefore must be dismissed. (Mot. Dismiss, Dkt. 13, at 8). The Court agrees. Plaintiff alleges that Copperas Cove has inadequate policies regarding "use of force, the necessity to render emergency medical assistance, and . . . shooting an unarmed fleeing person." (Am. Compl., Dkt. 12, ¶ 75). However, Plaintiff fails to provide sufficient facts to support the existence of these policies. She largely relies on the fact that the Incident occurred to suggest that Copperas Cove must have inadequate policies. (*Id.* ¶¶ 75, 80). "[P]lausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' [Plaintiff] must do more than describe the incident that gave rise to [her] injury." *Ratliff v. Aransas Cnty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020) (citing *Pena*, 879 F.3d at 622). Further, Plaintiff fails to plead any specific facts concerning the promulgation of these policies and the knowledge or deliberate indifference of the policymakers. Plaintiff states in a conclusory fashion:

> Each of these polices was actually known, constructively known, or ratified by the City of Copperas Cove and its policymakers and were promulgated with deliberate indifference to Ms. Murray's rights, as guaranteed by the Fourth, and Fourteenth Amendments to the United States Constitution, and this specifically deprived Ms. Murray of her Fourth Amendment right to be free from unjustified government intrusions on her person and property.

(Am. Compl., Dkt. 12, ¶ 76). Without alleging specific facts supporting these assertions, Plaintiff's *Monell* claims based on inadequate policies cannot survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (plaintiff must plead more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"); *see also Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.").

Plaintiff's *Monell* claims based on a failure-to-train theory suffer from the same deficiencies. Plaintiff appears to allege that Copperas Cove failed to train Stoneburner on the use of force, failed

to train all officers involved in the Incident on lawful arrests, and failed to train all officers involved in the Incident on the provision of medical care to an injured detainee. (Am. Compl., Dkt. 12, ¶¶ 75, 80). Once again, Plaintiff only pleads facts related to the Incident to bolster her claims that Copperas Cove has failed to train its police officers. (*See id.* ¶ 80 ("Apparently, Defendant Copperas Cove failed to train its officers on this policy as is evidenced by the actions taken that day.")). To sufficiently plead a failure-to-train claim, Plaintiff must plead that Copperas Cove was deliberately indifferent, "which usually requires a plaintiff to demonstrate a *pattern of violations.*" *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (internal citations omitted) (emphasis in original). Other than stating that multiple Copperas Cove police officers failed to provide her medical treatment, Plaintiff does not plead that there has been a pattern of Copperas Cove police officers failing to provide medical treatment due to insufficient training. Further, Plaintiff does not allege any specific facts concerning Copperas Cove's deliberate indifference to Plaintiff's constitutional rights when it comes to training their officers. Therefore, Plaintiff's failure-to-train claims also cannot survive a motion to dismiss.

## IV. Leave to Amend

Plaintiff has filed a motion for leave to file a second amended complaint. (Dkt. 30). Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given by the court when justice so requires. "A district court must possess a 'substantial reason' to deny a request for leave to amend." *Smith v. EMC Corp.,* 393 F.3d 590, 595 (5th Cir. 2004). The Fifth Circuit examines five considerations to determine whether to allow leave to amend a complaint: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *Smith,* 393 F.3d at 595. "Absent any of these factors, the leave sought should be freely given." *Id.* (citation omitted).

The Court will not grant Plaintiff's motion for leave to file a second amended complaint, (Dkt. 30), as Plaintiff's proposed second amended complaint contains several of the same deficiencies as Plaintiff's first amended complaint. (*See* Dkt. 30-1). However, given that this case is still in its early stages,[6] and given that there seems to be an ongoing dispute between the parties regarding various records request orders from the Texas Attorney General's Office,[7] the Court will not preclude Plaintiff from filing another motion for leave to file an amended complaint with a new proposed amended complaint attached.

In her motion for leave to amend, Plaintiff requests that the Court grant her limited discovery and withhold its judgment on the motions to dismiss until Plaintiff conducts discovery. Because the Court is amenable to Plaintiff filing another motion for leave to file an amended complaint, and because Plaintiff is vague as to what such limited discovery would entail, the Court will deny Plaintiff's request for discovery.

## V. CONCLUSION

In conclusion, Plaintiff's state tort claims are dismissed with prejudice. Plaintiff's municipal liability claims against Copperas Cove are dismissed without prejudice to Plaintiff filing another motion for leave to file an amended complaint. Plaintiff's Section 1981 and 1983 claims against Stoneburner have not been dismissed.

For the reasons given above, **IT IS ORDERED** that Defendant Stoneburner's motion to transfer, (Dkt. 27), is **DENIED**.

**IT IS FURTHER ORDERED** that Stoneburner's Motion to Dismiss, (Dkt. 14), is **GRANTED**. Plaintiff's state tort claims are **DISMISSED WITH PREJUDICE**.

---

[6] The Court only recently entered a scheduling order in this case setting trial for November 3, 2025. (Dkt. 36).
[7] Plaintiff alleges in several filings that she has requested copies of documents from Copperas Cove and that Copperas Cove has failed to comply with her requests, despite being ordered to do so by the Texas Attorney General's Office. (*See, e.g.* Dkt. 30, at 3–4). The Court makes no findings as to these allegations as this records request dispute is not before the Court.

**IT IS FURTHER ORDERED** that Copperas Cove's Motion to Dismiss, (Dkt. 13), is **GRANTED**. Plaintiff's claims against Copperas Cove are **DISMISSED WITHOUT PREJUDICE** to Plaintiff moving for leave to file an amended complaint.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a second amended complaint or to conduct limited discovery, (Dkt. 30), is **DENIED**. Plaintiff may file a motion for leave to file an amended complaint with a proposed amended complaint attached on or before **September 10, 2024**. The Court will not grant Plaintiff's request to conduct discovery.

**IT IS FINALLY ORDERED** that Plaintiff's motion for an extension of time, (Dkt. 20), is **DENIED AS MOOT**.

**SIGNED** on August 13, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE